UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SCOTT TUOMINEN, | Case No. 3:24-cv-00120-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| NEVADA GOLD MINES, LLC, | |
| Defendant. | |

## I.    SUMMARY

This employment dispute involves allegations of age discrimination arising primarily from reassignment of work location. Plaintiff Scott Tuominen asserts claim for discrimination based on his age under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and NRS § 613.330 against his employer, Defendant Nevada Gold Mines, LLC. (ECF No. 16 ("FAC").) Before the Court is Defendant's Motion for Summary Judgment (ECF No. 55 ("Motion").) [1] For the reasons discussed herein, the Court grants the Motion.

## II.    BACKGROUND[2]

Plaintiff has been employed with Defendant since March 1989. (ECF No. 16 at 3; ECF No. 55-1 at 12.) He started as a sampler and laborer. (ECF No. 55-1 at 13.)  Plaintiff then "got into the maintenance program." (*Id.*) Plaintiff has "held every position in

---

[1]Plaintiff responded (ECF No. 63 ("Response") and Defendant replied (ECF No. 70 ("Reply")).

[2]The following relevant background facts are undisputed unless otherwise noted.

maintenance from Mechanic Helper to Mechanic I, Mechanic II, Mechanic III," a position he still holds.[3] (*Id.* at 16.)

Plaintiff has worked at Defendant's various mine sites, starting at Gold Quarry, where he was initially assigned, and then moving to the North Area, back to Gold Quarry, and then to Emigrant. (*Id.* at 15.) Plaintiff was at Emigrant in 2010 and was there for about six years before returning to Gold Quarry in approximately 2016. (*Id.*) In 2019, Plaintiff was reassigned to Emigrant.[4] (*Id.* at 16-17.) On February 9, 2023, Plaintiff was reassigned from Emigrant back to Gold Quarry.[5] (*Id.* at 40.) Thereafter, no maintenance employee reported to Plaintiff (*id.* at 38); and Plaintiff was no longer a lead though Plaintiff did not know when he became a leadman (*id.* at 170-171).[6]

Toward the end of his time at Emigrant, Plaintiff and another employee, Richard Pearson, would take turns driving the company vehicle from Elko to Emigrant.[7] (*Id.* at 39-40.) Plaintiff would receive two additional hours of pay on the two days he would drive

[3]The FAC alleges Plaintiff "was promoted to Chief Mechanic" in 2008 and still holds that position. (ECF No. 16 at 3.) However, Plaintiff testified there is no "position of chief mechanic." (ECF No. 55-1 at 16.) He testified his job title is "Mechanic III, Tech VI." (*Id.* at 17.)

[4]Plaintiff's employment transferred from Newmont to Defendant on December 23, 2019. (ECF No. 55-1 at 17.)

[5]The FAC alleges Plaintiff was "unilaterally being reassigned to another position." (ECF No. 16 at 3 (emphasis omitted).) Defendant asserts that Plaintiff "was reassigned from Emigrant back to Gold Quarry as part of a larger consolidation of process maintenance mechanics." (ECF No. 55 at 5.) Defendant contends that immediately before Plaintiff was reassigned as part of the consolidation plan, another employee (Richard Pearson) complained about Plaintiff's alleged harassment, which led to both employees being reassigned as part of the investigation and then the planned process for reassignment of maintenance employees from Emigrant." (*Id.* at 6-7.) As discussed *infra*, the Court finds Defendant has offered a legitimate business reason for the decision to reassign Plaintiff back to Emigrant.

[6]Plaintiff had continued to receive leadman pay while he was at Emigrant for a few months even though he was not directing any other employee. (ECF Nos. 55 at 18; 55-1 at 171; 55-12 at 5.)

[7]When Plaintiff was first assigned to Emigrant, he had commuted to Emigrant in a van with the maintenance crew, though there was a company bus. (ECF No. 55-1 at 31-32.) During that time, they took turns driving the van and Plaintiff got paid when he drove the van. (*Id.* at 33-34; 136-137.) They later transitioned to driving to Emigrant in trucks and the same applied—Plaintiff got paid when he was driving. (*Id.* at 35-36.)

back and forth to Emigrant, resulting in 12 hours of pay for each of those days. (*Id.* at 39, 162-164.) Since Plaintiff's assignment back to Gold Quarry, his commutes from home to Gold Quarry are by the company shuttle buses or by driving his own vehicle. (*Id.* at 29-30.) But if Plaintiff drove to Emigrant from Gold Quarry, he got paid for the driving time as part of his regular 10-hour shift. (*Id.* at 37-38, 163-164.)

The claims arose from Plaintiff's last reassignment from Emigrant to Gold Quarry on February 9, 2023. (ECF No. 55-1 at 20-21.) Plaintiff was 59 years old at the time he filed the FAC on May 28, 2024. (ECF No. 16 at 3.) The FAC alleges two claims involving age discrimination.[8] The ADA claim alleges that "Defendant singled Plaintiff out for discrimination and demotion and pressure to resign due to his age, which was over 40." (*Id.* at 4.) The state law claim similar alleges age discrimination in violation of NRS § 613.330. (*Id.* at 5.)

**III.    DISCUSSION**

Defendant argues that Plaintiff's age discrimination claims fail because Plaintiff cannot establish a prima facie case of discrimination, and Defendant had legitimate non-discriminatory reasons for its decisions for which Plaintiff cannot show a pretext for age discrimination.[9] (ECF No. 55 at 11-26.)  The Court agrees that Defendant has met its burden in demonstrating no genuine issues of fact exist, entitling Defendant to summary judgment.

"To establish a disparate treatment claim under the ADEA, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or with

---

[8]The FAC does not allege a claim for retaliation. The Court agrees with Defendant that to the extent Plaintiff suggests in his Response that he is also alleging retaliation, Plaintiff did not. (ECF No. 70 at 10.)

[9]Defendant also argues that Plaintiff's claims are preempted under § 301 of the Labor Management Relations Act. (ECF No 55. at 26-30.) Because the Court agrees with Defendant that Plaintiff's claims fail on the merits, the Court declines to address Defendant's preemption argument though Plaintiff notably failed to respond to this argument.

direct or circumstantial evidence of discriminatory intent." *Coleman v. Barrick Goldstrike Mines, Inc.*, No. 3:20-cv-00718-MMD-CLB, 2023 WL 5806457, at *3 (D. Nev. March 23, 2023) (citing *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003)). Because Plaintiff does not offer direct evidence of discrimination or dispute Defendant's contention that the *McDonnell Douglas Corp.* framework applies,[10] the Court addresses Plaintiff's claims under this framework.

"[T]h employee must first establish a prima facie case of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation modified). To do so, a plaintiff must show that he was: (1) a member of the protected class (i.e., at least 40 years old); (2) performing his job satisfactorily; (3) subject to an adverse employment decision; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or that there were circumstances otherwise "giving rise to an inference of age discrimination." *See id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). If the employee makes this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *Id.* "If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.* To successfully establish an ADEA disparate treatment claim, the plaintiff must also prove that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citations omitted).

**A. Prima Facie Case**

---

[10]Because Nevada's anti-discrimination statutes are almost identical to their federal counterparts, the Court analyzes them under the same framework. *See Bullard v. Las Vegas Valley Water Dist.*, No. 2:15-cv-00948-JAD-VCF, 2018 WL 715358, at *4 (D. Nev. Feb. 5, 2018) (state law discrimination claims are "evaluated the same way as their federal analogs," referencing three federal schemes: Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA)); *Liston v. Las Vegas Metro. Police Dep't*, 908 P.2d 720, 721 n.2 (Nev. 1995) ("The action was brought pursuant to NRS 613.330, Discrimination on the Basis of Age, which is based on . . . the Age Discrimination in Employment Act (ADEA).") ; *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("we have previously looked to the federal courts for guidance in discrimination cases.")

As to the prima facie case, Defendant argues that Plaintiff cannot show the latter two elements. In his Response, Plaintiff "alleges suffering adverse employment actions in several different ways, not limited to removal of his leadman designation, removal of built in overtime, and an unwarranted reassignment in his work location to a less desirable location."[11] (ECF No. 63 at 10-11.) First and foremost, the Court agrees with Defendant that these actions (i.e., change in job responsibilities and loss of built-in overtime) were "derivatives of" Plaintiff's reassignment and are not separate adverse actions. (ECF No. 55 at 17-18.) In fact, the FAC alleges that the reassignment "was undesirable and punitive" and "was a demotion." (ECF No. 16 at 3.)

As to the fourth factor, Defendant offers Plaintiff's deposition testimony to show the circumstances did not "give rise to an inference of discrimination." In particular, Defendant offered evidence that Plaintiff was not replaced by any employee because all process maintenance employees were reassigned out of Emigrant as part of the consolidation, and Plaintiff still occupies the same position working out of a different location, Gold Quarry.[12] (ECF Nos. 55-1 at 37-38, 135-136, 155; 55-13 at 6; 55-15 at 3-4; 55-12 at 3-5;

---

[11]Plaintiff also contends that he was subjected to adverse actions—"false complaints and write-ups at work"—taken in retaliation for Plaintiff filing a complaint with the U.S. Equal Employment Opportunity Commission. (ECF No. 63 at 11.) As noted, the FAC does not allege a retaliation claim. Moreover, Plaintiff offers no evidence to support his counsel's assertions. Plaintiff's declaration states that his "reassignment occurred following false complaints and an unsubstantiated investigation." (ECF No. 63-2 at 2.) As to the complaints, Defendant responded assuming Plaintiff was referring to complaints by another employee, Richard Pearson, claiming four different instances of alleged harassment by Plaintiff while they were assigned to work at Emigrant. (ECF No. 55-20.) That led to both employees being informed they would be reassigned out of Emigrant on February 9, 2023. (ECF No. 55-1 at 81.) The complaints were not adverse actions by Defendant; they were made by another employee. Nor is the investigation into the complaints an adverse employment action because Plaintiff testified that he was not subjected to discipline (ECF No. 55-1 at 130-131, 145). *See Coleman v. Telles*, No. 2:24-cv-00930-APG-MDC, 2025 WL 401442, at *6 (D. Nev. Feb. 5, 2025) ("[A]ctions that do not result in changes to the conditions of employment, such as an investigation that results in no action against the investigated employee, are not adverse employment actions in the disparate treatment context.")

[12]Plaintiff's Response asserts that "younger and less experienced employees remained unaffected." (ECF No. 63-2 at 3.) Defendant correctly points out that this general assertion, without identification of any specific employees who were "unaffected" contradicted Plaintiff's deposition testimony. (ECF No. 70 at 4.) Such an uncorroborated assertion that contradicted Plaintiff's deposition testimony cannot be used to create a

55-10 at 3-4; 55-17 at 3-4.) In fact, Plaintiff testified that "[T]here was no replacement" when asked who replaced his position at Emigrant.[13] (ECF No. 55-1 at 136.) And Defendant pointed to Plaintiff's testimony that he had no evidence that his age was a factor in the decisions affecting the reassignment, though he also testified he was not told the reasons for the challenged decisions.[14]  (ECF No. 55-1 at 190-192.)

### B. Legitimate Business Reasons

Even assuming Plaintiff can establish his prima facie case based on his reassignment from Emigrant on February 9, 2023, and the resulting consequences that affected his built-in overtime and job responsibilities, the Court agrees with Defendant that it has offered legitimate non-discriminatory reasons for its decision to reassign Plaintiff from Emigrant. Defendant offered evidence to show Plaintiff was reassigned from Emigrant "as part of a larger consolidation process of maintenance mechanics." (ECF Nos. 55 at 5; 55-15 at 3-4; 55-12 at 3-5; 55-13 at 6.) A decline in operations at Emigrant had over time resulted in less employees being placed at Emigrant. By the time shortly before Plaintiff's reassignment, the staffing level at Emigrant had been reduced to two employees, Plaintiff as the process maintenance mechanic and an electrician (Richard

---

factual dispute.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991) ("The general rule in the Ninth Circuit is a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.")

[13]In his declaration attached to the Response, Plaintiff contends he "was replaced by mechanics such as Cory Martinez and Rebecca Banales." (ECF No. 63-2 at 3.) But as Defendant points out, this assertion contradicts Plaintiff's testimony that no one replaced him at Emigrant. (ECF No. 70 at 5.) Moreover, Plaintiff asserts that Martinez "was sent to Emigrant during [Plaintiff's] PTO and Banales took on task that [he] had handled." (ECF No. 63-2 at 3.) Defendant properly noted that others were sent to perform tasks that Plaintiff was sent to do after his reassignment when Plaintiff was on leave. (ECF No. 70 at 5.) Such work assignment does not create a factual dispute that Plaintiff's position was not replaced or that no maintenance staff was assigned to Emigrant after the business consolidation. As for Plaintiff's contention that Defendant has outsourced the work at Emigrant to a third party (ECF No. 63-2 at 5), it is insufficient to create a factual dispute as to the reasons for Plaintiff's reassignment or that the consolidation resulted the reassignment of all process maintenance mechanics from Emigrant.

[14]In his Response, Plaintiff disputes that he did not report age discrimination, claiming that he "submitted complaints internally and filed" EEOC charge. (ECF No. 63 at 6.) But Defendant's point is the lack of evidence that age was a factor in the employment decisions that Plaintiff challenges.

Pearson), such that Defendant had made the decision to move Plaintiff and the two other maintenance employees from Emigrant even before their actual reassignment. (ECF Nos. 55 at 4-5; 55-1 at 38.) Defendant explained the business decision was made based on a determination that it "can more easily allocate labor to where it is needed," and "fewer supervisors are needed by consolidating the employees and requiring them to report to one particular location, Gold Quarry." (ECF Nos. 55 at 5; 55-12 at 3-5.) The timing of Plaintiff's actual reassignment on February 9, 2023 was because of Pearson's complaints, which led to both employees being reassigned. (ECF No. 55-12 at 3.)

In his Response, Plaintiff disputes Defendant's proffered business reasons for the reassignment, asserting that his reassignment was "without notice or justification, while junior employees such as Travis Paul and Matthew Melendez were given advance notice and transferred under favorable conditions"[15]; and his reassignment "occurred following false complaints and an unsubstantiated investigation." (ECF No. 63-2 at 2.) Meanwhile, younger and less experienced employees remained unaffected." (*Id.*) However, as Defendant points out, Plaintiff testified he was informed of the reason for the reassignment. (ECF Nos. 70 at 3; 55-1 at 114-115, 129-130.) Plaintiff's general assertion that he was not given "notice or justification" are insufficient to create a factual dispute that Defendant offered legitimate business reasons for the decision to reassign Plaintiff and other employees from Emigrant. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a genuine issue where the only evidence presented is 'uncorroborated and self-serving testimony.'") (citation modified); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (finding that a plaintiff-appellant relying on her own affidavit to establish she did not understand a waiver was "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" and thus "insufficient to create a genuine issue of material fact") (citation modified); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding, in response to

[15]Defendant offered evidence to show that these two employees did not "directly report" to work at Emigrant. (ECF No. 70-1 at 2.)

uncorroborated affidavits, that "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data") (citation omitted). Nor is his assertion that "younger and less experienced employees remained unaffected" sufficient given his testimony that no employee in maintenance still reports directly to Emigrant and that maintenance employees report to Gold Quarry. (ECF No. 55-1 at 38, 47-48, 153-154.)

In sum, the Court agrees with Defendant that it has satisfied its burden to show the legitimate, non-discriminatory reasons for its decision to reassign Plaintiff to Emigrant and the resulting derivative consequences of the reassignment. The Court next addresses whether Plaintiff has demonstrated that these reasons were a pretext for age discrimination, concluding that Plaintiff has not met his burden.

**C. Pretext**

A plaintiff can show pretext "(1) *indirectly*, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007) (citations modified). Where, as here, Plaintiff seeks to establish pretext through circumstantial evidence, it "must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).

Even if the Court considers the reasons Plaintiff offered in his Response to dispute that he was reassigned to Emigrant as part of consolidation of operations, Plaintiff's assertions are insufficient to create a factual dispute that Defendant's proffered reasons are pretext for age discrimination. *See* discussion *supra.*

Plaintiff's Response asserts that there are "additional evidence strengthening pretext." (ECF No. 63 at 13.) First and foremost, as Defendant points out, Plaintiff offers no evidence to support these assertions. Even considering the list of unsupported assertions—that "[w]ithin months of Plaintiff's removal," Defendant outsourced tasks of

crusher maintenance at Emigrant that "Plaintiff historically handled,"[16] the lack of "objective criteria for the February 2023 transfers" and the reduction in maintenance staff—such assertions are not "specific and substantial" evidence of pretext to create a genuine issue of fact for trial. Nor do they show Plaintiff's age was a but-for cause for Defendant's decision to reassign Plaintiff to Emigrant. As Defendant points out, all maintenance employees at Emigrant were reassigned, not just Plaintiff. (ECF No. 70 at 18.)

In sum, the Court finds that Defendant has shown that no genuine issue of material fact exists as to whether Defendant's decision to consolidate operations, resulting in Plaintiff's reassignment from Emigrant was because of Plaintiff's age. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) ("The burden of demonstrating the absence of an issue of material fact lies with the moving party.") (citation omitted). Consequently, the Court also finds that Plaintiff fails to "set forth specific facts showing that there is a genuine issue for trial" to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Accordingly, the Court grants Defendant's Motion.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered Defendant's Motion for Summary Judgment (ECF No. 55) is granted.

---

[16]Defendant also offered evidence that RAM Enterprises was not doing maintenance work at Emigrant for the process maintenance department after Plaintiff's reassignment, and any work done would have been for the environmental department. (ECF No. 70-1 at 2.) But even if the maintenance work for the process maintenance department that Plaintiff would have performed was outsourced as Plaintiff claims, that does not show Defendant's proffered reasons for Plaintiff's reassignment—consolidation of business operations—to be pretexual.

It is further ordered that the Clerk of Court enter judgment in favor of Defendant in accordance with this order and close this case.

DATED THIS 16th Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

10